[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 19, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-14431
_____

D.C. Docket No. 99-03213-CV-SH

VICTOR A. MEIER, a minor, by and
through his parents, WILBER L. MEIER,
JR., as parent and natural guardian for
Victor Meier and Wilber L. Meier, III,
minors, PATRICIA MEIER, as parent for
Victor A. Meier and Wilber L. Meier, III,
minors, WILBER L. MEIER, III, a minor
by and through his parents Wilber L.
Meier, Jr., and Patricia Meier,

                                                    Plaintiffs-Appellants,

         versus

SUN INTERNATIONAL HOTELS, LTD.,
a Bahamas Company,
SUN INTERNATIONAL BAHAMAS, LTD.,
a Bahamas Company,
ISLAND HOTEL COMPANY, LTD.,
a Bahamas Company,a.k.a. Atlantis Resort & Casino,
Paradise Island, PARADISE ISLAND, LTD.,
a Bahamas Company, WEDGE HOTEL MANAGEMENT
(BAHAMAS) LTD., a.k.a. Resort & Hotel, Paradise Island
PARADISE GRAND HOTEL VENTURE, LTD.,
a Bahamas joint venture,

                                                    Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————

**(April 19, 2002)**

Before BLACK and RONEY, Circuit Judges, and RESTANI[*], Judge

RESTANI, Judge:

Plaintiffs-Appellants (hereinafter "Plaintiffs") appeal the district court's

dismissal of their complaint for lack of personal jurisdiction over several Bahamian

corporations as well as the district court's order denying reconsideration of that

dismissal. Defendants-Appellees request that the court affirm the district court or,

in the alternative, dismiss for *forum non conveniens*. Because we find that the

federal district court in Florida may properly assert personal jurisdiction over

defendants-appellees, we REVERSE and REMAND.

## I. BACKGROUND

In 1999, Plaintiffs were vacationing on Paradise Island in the Bahamas. On

July 19, 1999, Victor A. Meier went snorkeling with his father, plaintiff Wilber L.

Meier, Jr., and brother, plaintiff Wilber L. Meier, III, in an area known as

———————————————

[*] Honorable Jane A. Restani, Judge, U.S. Court of International Trade,
sitting by designation.

Snorkeler's Cove. While snorkeling, Victor was struck by a commercial motorboat and sustained massive injuries. After being transported to shore, Victor was airlifted to Miami, Florida, to undergo medical treatment. He survived but lost his arm and was permanently disfigured.

The Meiers subsequently filed this diversity action[1] in the Southern District of Florida against several foreign defendants, including Sun International Hotels, Ltd. ("Sun Hotels"), Sun International Bahamas, Ltd. ("Sun Bahamas"), Island Hotel Company, Ltd. ("Island Hotel"), and Paradise Island, Ltd. ("Paradise Island") (collectively "Sun Defendants").[2] Plaintiffs brought personal injury claims for Victor's physical injuries and for alleged emotional distress suffered by the entire family. Plaintiffs claimed that the Sun Defendants were partially responsible for the motorboat and, therefore, liable for the Plaintiffs' injuries.

According to Plaintiffs, the motorboat was owned and operated by a

---

[1] It is undisputed that the district court had original subject matter jurisdiction through diversity of citizenship pursuant to 28 U.S.C. § 1332. The Plaintiffs are citizens of Utah and the Defendants are foreign Bahamian corporations. Defendants do not contest that the claims exceed $75,000.00.

[2] The Meiers also brought claims against defendants Wedge Hotel Management (Bahamas), Ltd., and Paradise Grand Hotel Venture, Ltd. (collectively "Sheraton Defendants"). Although the district court denied the Sheraton Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, the Plaintiffs requested that the court dismiss the Sheraton claims without prejudice in order to pursue this appeal.

Bahamian water-sports vendor conducting business at the Atlantis Hotel and Casino ("Atlantis") located on Paradise Island.[3]  The Sun Defendants are a group of related corporations that own and operate Atlantis.  Sun Hotels is a holding company and the parent corporation of Sun Bahamas.  Sun Bahamas is a holding company and the parent corporation of both Island Hotel, which manages and operates Atlantis, and Paradise Island, the primary owner of land associated with Atlantis.   Because all four are admittedly affiliated with the ownership and operation of Atlantis, Plaintiffs claim that the Sun Defendants are liable for their own negligent supervision of the motorboat and vicariously liable for the operator's negligence.[4]

The Sun Defendants moved to dismiss the Plaintiffs' complaint for lack of personal jurisdiction or, in the alternative, for *forum non conveniens*.  Fed. R. Civ. P. Rules 12(b)(2) and (3).   The Sun Defendants argued that they were not subject to *in personam* jurisdiction in Florida because they are Bahamian corporations without the contacts necessary for the court to assert jurisdiction.

In support of the motion, the Sun Defendants submitted affidavits from

---

[3]  At the time of the accident, the Plaintiffs were registered guests at an unrelated hotel.

[4]  The Sun Defendants' denials of any relationship to the boat are irrelevant to this inquiry and would be more appropriately raised in a 12(b)(6) Motion to Dismiss or Motion for Summary Judgment.

Giselle Pyfrom and James Barrie Farrington.   Pyfrom is the Assistant Secretary of Sun Hotels and Senior Vice President at Sun Bahamas.  Farrington is the Secretary and Director of Paradise Island as well as the Director of Island Hotel.  The identical affidavits state, among other things, that the Sun Defendants are organized and incorporated in the Bahamas, have their principal place of business in the Bahamas, do not have a registered office or registered agent to conduct business in the United States, and, most importantly, conduct business only in the Bahamas.

In response to the affidavits, Plaintiffs submitted depositions and documentary evidence suggesting numerous contacts with Florida.  The evidence included a press release directing inquiries to a Sun Hotel officer's telephone number in Broward County, Florida, as well as a government form listing a Fort Lauderdale attorney as an "Authorized Representative in the United States" and "Agent for Service."  Plaintiffs submitted information from a website listing at least six contact telephone numbers associated with the Sun Defendants.  The thrust of this evidence was to suggest that the Sun Defendants themselves conduct business in Florida.  In addition, the Plaintiffs submitted evidence regarding two U.S. subsidiaries of Sun Hotels located in Florida, Sun International Resorts ("Sun Resorts") and Paradise Island Vacations ("PIV") (collectively "the Florida Subsidiaries").

5

The district court granted the Sun Defendants' motion to dismiss on grounds that the Florida long-arm statute did not provide general jurisdiction over subsidiary or agent corporations. The court stated that nothing in the language of § 48.193(2) supports plaintiffs' argument that the activities of the Sun Defendants' agents may be imputed to the defendants to satisfy the requirements of the statute. The court went on to state that, for the same reason, the contacts would not satisfy the due process requirements of the Fourteenth Amendment. Because the district court dismissed the claims for lack of jurisdiction, the court did not address *forum non conveniens*.

Following the court's order, Plaintiffs moved for reconsideration. The Plaintiffs requested that they be allowed to replead the matter based on additional evidence regarding the Sun Defendants' contacts in Florida. The district court denied that request. The Meiers, therefore, appeal that denial and the original dismissal for lack of jurisdiction. The Sun Defendants again argue that jurisdiction was improper. In addition, Sun Defendants argue *forum non conveniens*.

## II.  STANDARD OF REVIEW AND BURDEN OF PROOF

We review the district court's dismissal for lack of personal jurisdiction *de novo*. *See S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a

6

nonresident defendant. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted).

Where, as here, the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. *See Madara*, 916 F.2d at 1514.

### III. DISCUSSION

**A. Personal Jurisdiction**

The primary issue raised on appeal is whether the district court properly dismissed Plaintiffs' claims against the Sun Defendants for lack of personal jurisdiction. A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution. *See Morris*, 843 F.2d at 492; *see also Lamb v. Turbine Designs, Inc.*, 207 F.3d 1259, 1261 (11th Cir. 2000). The court must

determine whether the Sun Defendants' activities satisfy the Florida long-arm statute and, if satisfied, whether the extension jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Posner*, 178 F.3d at 1214 (citing *Sculptchair, Inc., v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).

## 1.	**Florida Long Arm Statute**

Plaintiffs argue that the Sun Defendants are subject to personal jurisdiction under the general jurisdiction[5] provision of the Florida long-arm statute. *See* Fla. Stat. Ann. § 48.193(2)(2002). The general jurisdiction provision of the statute states:

> A defendant who is engaged in *substantial and not isolated activity* within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

*Id.* (emphasis added). In addition to the activities undertaken by the Sun Defendants themselves, Plaintiffs argue that the Sun Defendants engaged in "substantial and not isolated activity" in Florida through the Florida Subsidiaries.[6]

---

[5] General jurisdiction arises from defendant's contacts with forum that are not directly related to cause of action being litigated. *See Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).

[6] The "substantial and not isolated activity" requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due Process Clause as discussed in *Helicopteros*

This gives rise to two issues: 1) whether the Florida long-arm statute allows the extension of general jurisdiction to a non-resident corporation based on the activities of an agent; and 2) whether the Florida subsidiaries are agents of the Sun Defendants.

### a. General Jurisdiction Over Related Corporations

The Sun Defendants argue that the plain language of the Florida long-arm statute prohibits the exercise of general jurisdiction over a non-resident corporation based upon the acts of a subsidiary or related corporation. The Sun Defendants compare the specific jurisdiction provision of the Florida long-arm statute, which discusses the extension of jurisdiction to claims arising from specific acts of an agent,[7] to the general jurisdiction provision, which does not mention agents. The Sun Defendants argue that the absence of language regarding agents in the latter should be construed as a prohibition against the extension of general jurisdiction based on an agent's activities.

---

*Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413-16, 104 S.Ct. 1868, 1872-73 & n. 9 (1984). *See Woods v. Nova Cos. Belize, Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999).

[7] Fla. Stat. Ann. § 48.193(1) states that "[a]ny person, whether or not a citizen or resident of this state, who personally *or through an agent* does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state. . ." *Id.* (emphasis added).

Plaintiffs cite to *Universal Caribbean Establishment v. Bard*, 543 So.2d 447 (Fla. 4th DCA 1989), for the proposition that, under the general jurisdiction provision of the Florida long-arm statute, the activities of the Florida Subsidiaries can be imputed to the Sun Defendants. In *Universal Caribbean*, the Florida Court of Appeals reviewed facts similar to those at issue here. The plaintiffs brought a personal injury suit against Universal Caribbean, the non-resident corporation that owned the foreign resort allegedly involved in the injury. Universal Caribbean moved to dismiss for lack of personal jurisdiction. The plaintiff argued that general jurisdiction was proper under section 48.193(2) based on the activities of a Florida subsidiary established by Universal Caribbean as a domestic booking agent for its resort.

Upon reviewing the functions of the subsidiary and its ties to the foreign parent corporation,[8] the Florida Court of Appeals held that "Universal Caribbean

---

8 In *Universal Caribbean*, the court reviewed the financial, administrative, and practical connections between Universal Caribbean and the Florida subsidiary, Jolly Beach, Limited (hereinafter "Limited") at length:

Limited's business consists of being a tour operator solely for Universal Caribbean's Antigua resort. It is the largest booking agent in the United States for Universal and books approximately 20,000 reservations per year. While the resort also deals with other tour operators, Limited deals only with Universal Caribbean. In fact, Limited advertises that it is the tour agent for "our own hotel." Dr. Erhardt [, the president of Universal Caribbean and owner of the hotel,] approved and helped work on these advertising

did engage in substantial activity in this state" through its subsidiary. *Id.* at 448.

The court went on to hold that the foreign corporation was subject to general

jurisdiction pursuant to § 48.193(2) based upon the activities of its Florida

subsidiary. *Id.*

Although the Sun Defendants' position conflicts with the intermediate state

court decision in *Universal Caribbean*, the district court adopted Sun Defendants'

theory finding that "[n]othing in the language of the general personal jurisdiction

brochures. Universal Caribbean approved all of the brochures, and the stationery of Limited uses the same logo as Universal Caribbean. One of the brochures prepared by Mr. Mermod [, a former employee of Universal Caribbean and President of Limited,] and Dr. Erhardt states that "when booking Jolly Beach, you book directly with the hotel as tour operator." All of these materials were prepared with the permission and approval of Universal Caribbean. Both Dr. Erhardt and the hotel managers come to the United States occasionally, and, while here, they meet with Mr. Mermod and visit Limited's office. Furthermore, Limited has an employee at the resort to assist guests.

Limited prepares tour packages from hotel room rates given to it by Universal Caribbean. It puts a profit on the total package and collects these monies from various travel agents with whom it deals. It is then invoiced by the hotel for the rooms occupied by Limited's tour guests, and Limited pays those invoices by wire transfer of monies to the hotel's accounts in New York. Limited also handles guest complaints and credits for the resort. Although Limited does not have any written agreement to perform other services for Universal Caribbean, it occasionally arranges for special transportation of items to the hotel, special arrangements for guests, and special needs of the hotel when requested.

*Universal Caribbean*, 543 So.2d at 448.

provision supports the plaintiffs' argument that the activities of the Sun Defendants' agents may be imputed to the defendants to satisfy the requirements of the statute." The court expressly rejected the holding of *Universal Caribbean* stating that "[b]ecause it is not a decision of the Florida Supreme Court, [*Universal Caribbean*] does not constitute binding authority on this issue of Florida law." We disagree.

The reach of the [Florida long-arm] statute is a question of Florida law." *Robinson v. Giarmarco & Bill*, *P.C.*, 74 F.3d 253, 257 (11th Cir. 1996). "[F]ederal courts are required to construe [such law] as would the Florida Supreme Court." *Madara*, 916 F.2d at 1514. "Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of its intermediate courts." *Sculptchair*, 94 F.3d at 627 (citing *Polskie Linie Oceaniczne v. Seasafe Transp. A/S,* 795 F.2d 968, 970 (11th Cir. 1986)).

Defendants do not cite to any Florida state case questioning *Universal Caribbean*. Instead, the Sun Defendants cite to *Polymers, Inc. v. Ultra Flo Filtration Sys., Inc.*, 33 F. Supp. 2d 1008 (M.D. Fla. 1998). In *Polymers*, a Florida federal district court determined that general jurisdiction could not be exercised over a parent corporation based on the activities of its Florida subsidiary because § 48.193(2) "limits jurisdiction to acts of the defendant itself." *Id.* at 1011. In reaching this conclusion, the court cited only to the language of the statute and

*Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985), claiming that *Pesaplastic* limited the analysis of personal jurisdiction based on acts of an agent to specific jurisdiction. *Polymers* is neither binding nor correct.

First, the court in *Polymer*s was bound by *Universal Caribbean* for the same reason we are here and, therefore, the court erred by construing the long-arm statute without reference to it. Second, *Polymers'* reliance on *Pesaplastic* was incorrect. *Pesaplastic* in no way limited the analysis of general jurisdiction under the Florida long-arm statute. *Pesaplastic* was decided in January of 1985, shortly after the general jurisdiction provision of the Florida long-arm statute was amended in 1984 to include the general jurisdiction provision.[9] Although it is not clear, it is entirely likely that *Pesaplastic*, an appeal from a 1982 district court case, was analyzed under the pre-1984 statute, which did not differentiate between specific and general jurisdiction.

Even if the general jurisdiction provision had existed, *Pesaplastic* does not mention § 48.193(2), much less limit its exercise. In *Pesaplastic*, the plaintiff

_____

[9] This general jurisdiction provision "was added to the statute in 1984 to expand the jurisdiction of Florida courts to include a defendant engaged in substantial activities in Florida regardless of whether the claim arises from that activity, thus eliminating the 'connexity' requirement." *Universal Caribbean*, 543 So.2d at 448 (citing *Windels, Marx, Davies and Ives v. Solitron Devices, Inc.,* 510 So.2d 1177 (Fla. 4th DCA 1987); *American Motors Corp. v. Abrahantes,* 474 So.2d 271 (Fla. 3d DCA 1985)).

sought jurisdiction under § 48.193(1)(a), one of several specific jurisdiction provisions, claiming that a foreign parent "conducted business" in Florida through a local subsidiary. *See id.* at 1521. The court was not asked and, therefore, did not address § 48.193(2).[10]

        b.     *Agency*

Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. *See Consolidated*, 216 F.3d at 1293.[11] "On the other hand, if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." Charles Alan Wright & Arthur R.

---

[10] *Pesaplastic* could not have considered the intermediate state court's decision because it had not been issued.

[11] Where the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Consolidated*, 216 F.3d at 1293, (quoting *Portera v. Winn Dixie of Montgomery, Inc.,* 996 F.Supp. 1418, 1423 (M.D.Ala. 1998)(quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069 (2d ed.1987))).

14

Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002) (citations omitted). In order to establish jurisdiction over the Sun Defendants, therefore, Plaintiff must persuade the court that the Florida Subsidiaries are the entities through which the Sun Defendants conduct substantial business activity in Florida. *See Consolidated* at 1293-94.

As indicated, in *Universal Caribbean*, the court found that a domestic subsidiary, acting exclusively as a booking agent for the foreign hotel owned by the non-resident corporation, was an agent of the foreign corporation so that the activities of the domestic subsidiary could be imputed to the non-resident corporation for jurisdictional purposes. *Universal Caribbean*, 543 So.2d at 448. The relationship between the Sun Defendants and the Florida Subsidiaries is similar to that described in *Universal Caribbean*. As in *Universal Caribbean*, the Florida Subsidiaries were established by the Sun Defendants to serve the Bahamian Hotel business, with Sun Hotels as the principal parent corporation.[12]

The Florida Subsidiaries are wholly-owned subsidiaries of Sun International North America, Inc., ("Sun N.A."), a Delaware corporation. Sun N.A., like Sun

_____

[12] In response to the Sun Defendants' affidavits objecting to jurisdiction, Plaintiffs deposed four representatives of the Sun Defendants including Pyfrom, Farringtom, Kent Lewis, Comptroller for Sun Resorts, and Howard Karawan, an officer for both of the Florida Subsidiaries. These depositions described numerous connections between the Sun Defendants and the Florida Subsidiaries.

15

Bahamas, is a wholly-owned subsidiary of defendant Sun Hotels.  According to Plaintiffs' submitted depositions, both Sun Resorts and PIV solicit and coordinate reservations for visits to Atlantis.  According to those depositions, the Florida Subsidiaries coordinated over fifty (50) percent of all guests at Atlantis in 1999, the majority of which were from the U.S.

In addition, Sun Resorts coordinates all advertising and marketing for Atlantis. Sun Resorts purchases goods in the U.S. for Atlantis.  Sun Resort provides day to day accounting services, including collection services, and maintains direct communication links to the Atlantis for the transmittal of reservation and accounting information.  The Sun Defendants do not deny that the Florida Subsidiaries perform these services.  The Sun Defendants argue that these related corporations are legally separate entities that are merely under service contracts with the Sun Defendants and, therefore, the actions of one cannot support jurisdiction for the other.

The financial ties between the Sun Defendants and the Florida subsidiaries suggest a relationship far beyond service contracts.  For example, the Sun Defendants maintain several bank accounts in Florida.  Sun Resorts manages these accounts.  In addition to paying for advertising and other expenses incurred by the Sun Defendants, Sun Resorts pays itself from these accounts.  When asked whether

"the same group of people at Sun Resorts handles both the Sun Resorts payables and the Sun Bahamas receivables," Kent Lewis answered "yes" and went on to agree that Sun Resorts simply sends invoices to itself. According to the limited record, Sun Resorts writes the check to itself from Sun Bahamas' account at City National Bank in Hallandale, Florida and deposits the check in its own account at the same bank. According to the initial evidence submitted, Sun Resorts has a similar arrangement with each of the Sun Defendants.

The court may extend jurisdiction to any foreign corporation where the affiliated domestic corporation "manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation." *See State v. Am. Tobacco Co.*, 707 So.2d 851, 855 (Fla. 4th DCA 1998) (citations omitted). The Florida Subsidiaries conduct business solely for the Sun Defendants. In his deposition, Lewis confirmed that Sun Resorts does not "undertake any business activity for anyone other than the Sun [D]efendants." In addition, Lewis stated that PIV's sole purpose is to sell travel packages only to Atlantis and other resorts owned and operated by the Sun Defendants.

As with Limited in *Universal Caribbean*, the evidence submitted strongly suggests that the Florida subsidiaries were mere instrumentalities of the Sun Defendants. Consequently, the court finds that Plaintiff has met its *prima facie*

17

burden establishing jurisdiction over the Sun Defendants under the Florida long-arm statute.

Although the parties do not argue the matter in depth, the Court notes that the district court order stated that the activities of the Florida Subsidiaries could, at best, only be imputed to Sun Hotels.

> Preliminarily, the Court notes that, in this case, potential imputation of [the Florida Subsidiaries'] activities in Florida is only relevant to one defendant, Sun Hotels, as their ultimate parent . . . . [Sun Bahamas, Island Hotel, and Paradise Island] do not stand in a parent/subsidiary relationship to the [Florida Subsidiaries]. Like the [Florida Subsidiaries], they stand in a subsidiary relationship to Sun Hotels.

Agency is not, however, limited to a parent-subsidiary relationship. Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates. *See United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 45, 48 (1st Cir. 1993) (asserting jurisdiction over Scottish parent and co-subsidiary based on business relationship with and activities of Massachusetts subsidiary); *see also Pappalardo v. Richfield Hospitality Servs., Inc.*, 790 So.2d 1226, 1228 (Fla. 4th DCA) (finding agency based on evidence that the various parent and subsidiary defendants were "a confusing conglomerate, and were essentially one and the same company both financially and structurally.").

The Florida Subsidiaries conduct business with and for all of the Sun

18

Defendants. The Florida Subsidiaries act as accounting, advertising, and booking departments for Island Hotel and Paradise Island, and therefore, Sun Bahamas, inasmuch as they do for Sun Hotels. The evidence, therefore, suggests that the Florida Subsidiaries were agents of all the Sun Defendants, not just Sun Hotels.

Because the Florida long-arm statute provides general jurisdiction based on the activities of an agent, *see* discussion *supra*, the Court finds that Plaintiffs have sufficiently established that the Sun Defendants, through their own actions[13] and through the actions of the Florida Subsidiaries, have engaged in "substantial and not isolated activity" within Florida and are, therefore, subject to personal jurisdiction pursuant to § 48.193(2).

### 2. Fourteenth Amendment Due Process

In addition to satisfying the Florida long-arm statute, a federal court sitting in diversity must insure that jurisdiction comports with the due process requirements of the Fourteenth Amendment. *See Posner*, 178 F.3d at 1220. Due process

---

[13] Plaintiff submits evidence that the Sun Defendants have had some direct contact with the forum state. The Sun Defendants maintain and staff several Florida telephone numbers listed on the "Sun" website as contacts for the Sun Defendants. *See* www.sunint.com (last visited March 22, 2002). The Sun Defendants maintain seven bank accounts in Southern Florida. A recent Sun Hotels press release directed all inquiries to John Allison, Executive Vice President and Chief Financial Officer of Sun Hotels, at a Florida telephone number. A recent Form F-4 Registration Statement lists a Fort Lauderdale attorney as Sun Hotels' "Authorized Representative in the United States" and "Agent for Service."

requires that a non-resident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945); *see also Consolidated Dev. Corp.*, 216 F.3d at 1291.

### a. Minimum Contacts

A foreign corporation's contacts with the forum that are unrelated to the litigation must be substantial in order to warrant the exercise of general personal jurisdiction. *Consolidated Dev. Corp.*, 216 F.3d at 1292. "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Id.*; *see also Borg-Warner Acceptance Corp. v. Lovett & Tharpe,* 786 F.2d 1055, 1057 (11th Cir. 1996); *Helicopteros,* 466 U.S. at 412-13, 104 S.Ct. at 1872-73.

The district court determined that jurisdiction was improper under the Fourteenth Amendment for the same reasons it rejected jurisdiction under the Florida long-arm statute. The court determined that the activities of the Florida subsidiaries could not be imputed to the Sun Defendants and that the activities of the Sun Defendants alone were insufficient to satisfy the minimum contacts requirement. We respectfully disagree.

As discussed, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. Where the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Consolidated Dev. Corp.*, 216 F.3d at 1293 (citing *Portera v. Winn Dixie of Montgomery, Inc.,* 996 F.Supp. 1418, 1423 (M.D.Ala.1998) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069 (2d ed.1987)).

In *Consolidated Dev. Corp.*, 216 F.3d at 1295, the Court declined to exercise jurisdiction over a non-resident corporation. The Sun Defendants argue that *Consolidated Dev. Corp.* supports the proposition that due process requirements prohibit the extension of jurisdiction based on the actions of an agent. Defendants' reliance on *Consolidated Dev. Corp.* is misplaced. The court dismissed the matter, in part, because the plaintiffs came forth with no evidence contradicting the corporation's affidavits. *Id.* at 1294. Here, Plaintiffs submitted substantial evidence contradicting Defendants' affidavits. Because the court must, for the purposes of jurisdiction, construe all reasonable evidentiary conflicts in favor of the Plaintiffs, *see Morris*, 843 F.2d at 492, the Court concludes that Plaintiffs submitted sufficient

21

evidence to contradict Defendants' affidavits.[14]

In *Consolidated Dev. Corp.*, the court went on to state that, in order for the plaintiff to persuade the court to extend general jurisdiction over the non-resident parent corporation, the plaintiff would have to show that the domestic subsidiary's existence was simply a formality, and that the affiliated corporation was merely the non-resident's agent. *Id.* For the same reasons stated previously, the Court here is persuaded that the Florida Subsidiaries' existence was simply a formality, and that the Florida Subsidiaries were merely the Sun Defendants' agents in Florida.

In a similar case, *Wiwa v. Royal Dutch Petroleum, Co.*, 226 F.3d 88, 95 (2d Cir. 2000), the Second Circuit determined that the activities of a domestic subsidiary were sufficient to constitutionally extend jurisdiction over a non-resident corporation.

> The continuous presence and substantial activities that satisfy the requirement of doing business do not necessarily need to be conducted by the foreign corporation itself. In certain circumstances, jurisdiction has been predicated upon activities performed in New York for a foreign corporation by an agent. Under well-established New York law, a court of New York may assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative entity and that New York representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are

---

[14] The Court notes that Defendants' affidavits contain little more than conclusory statements that the Sun Defendants are not subject to jurisdiction in Florida. Conclusory affidavits are insufficient to shift the burden back to Plaintiff to produce evidence supporting jurisdiction. *Posner*, 178 F.3d at 1215.

sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available.

*Id.* (citation omitted). As in *Wiwa*, the Florida Subsidiaries render services on behalf of the Sun Defendants and are sufficiently important to the Sun Defendants that those corporations would themselves perform the equivalent services if the Florida Subsidiaries did not exist.

For the purposes of jurisdiction, the Court must construe all reasonable inferences in favor of Plaintiffs. *See Madara*, 916 F.2d at 1514. Based on the evidence previously discussed, it is reasonable to assume that the creation and operation of the Florida Subsidiaries is a mere corporate formality and that the Florida Subsidiaries are agents of the Sun Defendants. The Court finds that Plaintiff has sufficiently established that the Sun Defendants' had continuous and systematic contacts with the forum state through the activities of the Florida Subsidiaries.

### b. *Traditional Notions of Fair Play and Substantial Justice*

In addition to a finding of continuous and systematic contacts, the Court must also determine whether the extension of jurisdiction comports with traditional notions of fair play and substantial justice under the principles established in *International Shoe* and its progeny. *See Posner*, 178 F.3d at 1221. In determining whether jurisdiction would comport with traditional notions of fair play and

23

substantial justice, the court looks at: (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies. *See Future Tech. Today v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462 ,476, 105 S.Ct. 2174, 2184-85 (1985)).

Plaintiffs are Utah residents with a combined annual salary of $37,833. The Sun Defendants operate multiple luxury resorts. The Sun Defendants spent between seven and eleven million advertising in the U.S. in 1998 alone. The burden on Defendants to litigate the matter in Florida is insignificant when compared with the burden on Plaintiffs. Defendants argue that Plaintiffs could litigate the matter in Bahamas, but that litigation is clearly inapposite to obtaining convenient and effective relief.

Both Florida and the interstate judicial system have a strong interest in seeing this matter resolved in Florida. Millions of tourists travel to Caribbean resorts each year from Florida and elsewhere in the United States. Both Florida and the interstate judicial system have an interest in adjudicating disputes arising from

24

injuries which occur at or as a result of these resorts, particularly when the injured are flown into Florida for medical treatment as a result. The Court finds that jurisdiction in Florida would comport with traditional notions of fair play and substantial justice.

## C. *Forum Non Conveniens*

The Sun Defendants alternatively argue that, even if the Court determines that the exercise of jurisdiction comports with the Florida long-arm statute and the Constitution, the case should be dismissed for *forum non conveniens*. Fed. R. Civ. P. 12(b)(3).

A dismissal under *forum non conveniens* requires a minimal amount of evidentiary analysis by the district court, including a determination as to potential witnesses, costs, etc. *See C.A. La Seguridad v. Transytur Line,* 707 F.2d 1304, 1307 (11th Cir. 1983). The district court did not reach the issue. The Court finds that there is insufficient evidence to rule upon the matter and, therefore, remands the issue to the district court to determine the facts supporting Defendants' motion to dismiss for *forum non conveniens*.

## CONCLUSION

We find that, for the purposes of jurisdiction, the activities of the Florida Subsidiaries may be imputed to the Sun Defendants under both the Florida long-

25

arm statute and the Constitution.  We find that the Defendants had continuous and systematic contacts with the forum state, both through their own actions and through those of the Florida Subsidiaries, sufficient to exercise jurisdiction in this matter.

REVERSED and REMANDED