[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11765
_____

D.C. Docket No: 1:12-cv-22653-DLG

ZOLT SABO,
ILIJA JANEV,
STEFAN VIDOJKOVIC,
individually and on behalf of all others similarly situated,

Plaintiffs - Appellants,

versus

CARNIVAL CORPORATION,
d.b.a. Carnival Corporation & PLC,
CARNIVAL PLC,
d.b.a. Carnival Corporation & PLC,
CARNIVAL CORPORATION & PLC,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 12, 2014)

Before MARCUS, Circuit Judge, and PROCTOR[*] and EVANS,[**] District Judges.

PROCTOR, District Judge:

Today, we consider whether Carnival Corporation & PLC, which is a dual-listed company -- i.e., a corporate structure that joins separate corporations in a common economic enterprise, while allowing the corporations to maintain their individual legal identities -- is properly suable under the laws of Florida in this action.  After careful review and with the benefit of oral argument, we conclude that it is not.  We therefore affirm the district court's dismissal of this lawsuit.

## I.    The Pleadings and Dismissal Below

From time immemorial, there have been those who have made their living on the sea, a long tradition joined by Zolt Sabo, Ilija Janev, and Stefan Vidojkovic, all of whom worked aboard Cunard Line cruise ships.  Unfortunately, their careers were not without interruption, as all of them sustained back injuries that required land-based rest and recuperation.  Injured sea workers are entitled by law to certain medical and unemployment benefits, commonly referred to as "maintenance and cure," and Sabo, Janev, and Vidojkovic (hereinafter sometimes referred to as "the

---

[*] The Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

[**] The Honorable Orinda D. Evans, United States Senior District Judge, for the Northern District of Georgia, sitting by designation.

Seafarers") each collected such benefits, with each receiving three months of wages and two months of medical expenses. Those are the benefits that these and other employees agreed to in their contracts with Cunard Celtic Hotel Services, Ltd., a company that operates under the corporate umbrella of Carnival Corporation & PLC — the dual-listed company ("DLC") comprised of Carnival Corporation (a Panamanian corporation headquartered in Miami, FL) and Carnival PLC (a British corporation headquartered in Southampton, England). However, the Seafarers became unsatisfied with the extent of their maintenance and cure, believing that their contracts impermissibly limited their compensation.

On July 18, 2012, Plaintiffs Sabo, Janev, and Vidojkovic filed a class action complaint against Defendants Carnival Corporation and Carnival PLC alleging failure to provide maintenance and cure in accordance with general United States maritime law and the Jones Act, a federal statute that provides legal remedies not otherwise guaranteed under general maritime law. Defendants responded by filing a Motion to Dismiss, arguing, among other things, that the Seafarers' claims were due to be dismissed because (1) the district court lacked in personam jurisdiction over Carnival PLC, (2) Carnival Corporation was an improper party to the case (as it was adequately shielded from liability by its corporate form), and (3) the Complaint failed to meet federal pleading standards.

3

The Seafarers' Response made clear that they only intended to sue one defendant, Carnival Corporation & PLC,[1] completely re-orienting the focus of the case and making Plaintiffs' ability to bring suit against a DLC the operative issue. In its subsequent Order, the district court addressed the Seafarers' newly articulated position, and wholly rejected the notion that it could exercise jurisdiction over a DLC, including Carnival Corporation & PLC:

> [The] Class Action Complaint fails to convince the Court that the enterprise formed through the dual-listed company structure overcomes the individual corporate identity of Carnival Corporation and Carnival PLC to give the Court jurisdiction over the dual-listed company Carnival Corporation and PLC.[2]

The district court did not completely foreclose the possibility that a DLC could be haled into court, but noted that "the case or controversy would have to arise from said corporate structure (i.e., the shared assets or investments [of the DLC])."[3] Dismissing their complaint without prejudice, the district court gave the Seafarers ten days to file an amended complaint.

---

[1] Response in Opposition to Motion to Dismiss at 1-2, Sabo v. Carnival Corp., No. 12-22653 (S.D. Fla. Sept. 17, 2012) ("First and foremost, Plaintiffs have sued one entity and one entity only: The dual-listed company known as Carnival Corporation & PLC. Plaintiffs have not sued Carnival Corporation in its individual corporate capacity. Plaintiffs likewise have not sued Carnival PLC in its individual corporate capacity.").

[2] Order Granting Defendants' Motion to Dismiss at 5, Sabo v. Carnival Corp., No. 12-22653 (S.D. Fla. Nov. 29, 2012).

[3] Id. at 6.

4

The Seafarers filed an amended class action complaint that named Carnival Corporation & PLC as the sole defendant.  The amended complaint closely resembled the initial complaint, but devoted greater space to describing the nature of the DLC, in an apparent attempt to demonstrate the corporate structure's amenability to suit in the Southern District of Florida.  However, the amended complaint failed to directly address the district court's initial misgivings about the legal status of DLCs, an omission that would prove fatal to the Seafarers' case.  Indeed, the district court bluntly rebuffed their creative attempt to amend their pleading, writing:

> Plaintiffs, by amending their Class Action Complaint to name the dual-listed corporation Carnival Corporation and PLC as the sole defendant, have ignored the Court's prior determination that the dual-listed corporation was not a proper entity . . . The Amended Class Action Complaint contains the same allegations as the original Class Action Complaint.  The Court declines to delineate from its previous position that this action does not arise from the structure of the dual-listed corporation.  Therefore, the Court does not have personal jurisdiction over the dual-listed corporation Carnival Corporation and PLC.[4]

The Seafarers appealed the district court's Order, presenting the question that we answer today: based upon the record before us and the laws of Florida, was Carnival Corporation & PLC, a DLC, subject to suit as a corporation, according to

---

[4] Order Granting Defendants' Second Motion to Dismiss at 5-6, Sabo v. Carnival Corp., No. 12-22653 (S.D. Fla. March 18, 2013).

5

the doctrine of estoppel, or under a joint venture theory of liability?  We conclude it was not.

## II.    Standard of Review

In evaluating the district court's decision to dismiss a case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), we review the legal conclusions of the district court de novo. See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268 (11th Cir. 2002).

## III.    Discussion

A dual-listed company (DLC) is a corporate structure that binds two separate corporations into a unified economic enterprise, but allows the participating entities to maintain their individual legal identities.  The arrangement is established through the execution of an equalization agreement, a contract that defines and governs the relationship between the two companies.  Such a structure bears many merger-like qualities, such as common ownership of assets and integrated management, but also exhibits some hallmarks of corporate independence, such as separate stock exchange listings.  Almost always utilized by corporations of disparate national origin, DLCs are employed for a variety of reasons, including the advantages they potentially offer in the areas of tax, investor/public relations, and regulatory oversight.  Carnival Corporation and Carnival PLC (formerly P&O Princess Cruises) chose to dual list (rather than merge) because it allowed them to

6

gain access to multiple financial markets (both the New York Stock Exchange and the London Stock Exchange), avoid divestment from British institutional investors (many of whom are restricted from holding shares in foreign-owned companies), and maintain their distinct, individual brands.

Just as the creation of Carnival Corporation & PLC involved significant tactical considerations, so too did the Seafarers' decision to sue the DLC rather than its different corporate components. Instead of pursuing a complicated, convoluted case against Carnival Corporation & PLC, the Seafarers could have asserted claims against Cunard Celtic Hotel Services, Ltd. (their direct, contractual employer) or Carnival PLC (Cunard Celtic's parent company). However, in this matter the Seafarers have charted a course less traveled, making the tactical choice to focus their suit on the DLC in hopes of reaping greater rewards. By suing the DLC, the Seafarers apparently hoped to (a) invoke U.S. maritime law, which affords injured seamen more extensive maintenance and cure than that provided under the Seafarers' U.K.-based contracts, and (b) tap into a larger pool of potential class members, opening the class not only to workers from the Seafarers' own Cunard Line, but also to employees from Carnival Corporation & PLC's entire fleet. Indeed, the Seafarers took a gamble in solely pursuing the DLC, one that could pay off in broader, more viable claims, but only if they could demonstrate that a DLC is a properly suable entity.

7

Throughout this litigation, the Seafarers have primarily advanced three theories[5] as to why Carnival Corporation & PLC -- despite its status as a DLC -- is a suable entity.  First, they assert that Carnival Corporation & PLC is, in reality, a corporation and, thus, can be sued like one.  Second, they aver that Carnival Corporation & PLC is subject to the doctrine of corporation by estoppel, arguing that it cannot avoid being sued as a corporation after holding itself out as a corporate-like entity.  Third and finally, they contend that Carnival Corporation & PLC is essentially a joint venture between the participating corporations, making the DLC suable pursuant to Florida's law of joint ventures.  These theories are addressed in turn below.

### A.    Carnival Corporation & PLC is Not Suable as a Corporation

The Seafarers focus much of their briefing efforts on demonstrating the unified, integrated nature of Carnival Corporation & PLC in an attempt to persuade the court that the DLC should be treated like any other stand-alone corporation.  Indeed, they claim that "Carnival Corporation & PLC operate[s] as a single enterprise sufficient to establish personal jurisdiction over both entities as a single operation."[6]  Although the Seafarers are correct in their assertion that Carnival

---

[5] To be clear, the Seafarers' arguments are not so precisely delineated in their briefing. Nevertheless, the court has discerned these as the primary arguments made in support of reversal.

[6] Brief of Appellants at 15, Sabo v. CCL, No. 13-11765 (11th Cir. June 10, 2013); see also id. at 10 ("[W]hen those two aforesaid entities[,] Carnival Corporation and P&O Princess Cruise Line . . .[,] merged in 2003, it formed one entity, whether incorporated or not, called

8

Corporation & PLC resembles a corporation in many ways, their simplistic argument badly misses the mark.

Indeed, regardless of whether an entity exhibits qualities common to corporations, it is not properly subject to treatment as a corporation absent incorporation, the fundamental act of corporate creation and the dividing line between corporations and non-corporations.[7]  In order for Carnival Corporation & PLC to assume the characteristics of a corporation (particularly the ability to sue and be sued),[8] it must be incorporated, an action which the Seafarers at least implicitly acknowledge has not occurred, neither in Florida, nor in any of the other forty-nine states.  Accordingly, despite their best efforts, the Seafarers cannot maintain a suit against Carnival Corporation & PLC on the basis of its corporate-like qualities.

**B.    Carnival Corporation & PLC is Not Estopped from Denying that it is a Corporation**

---

Carnival Corporation & PLC[,] the Appellee herein.  Assuredly, if Appellee can use this singular brand to retain stockholders in either of the two markets in which it list[s] its stocks, to sign contracts, to make decisions regarding cruise operations and/or advertise to consumers, that same entity can be held liable for their tortious acts in a court of law.")).

[7] See, e.g., Florida Business Corporation Act, Fla. Stat. § 607, et seq., which defines a corporation as "a corporation for profit . . . incorporated under or subject to the provisions of this act." Fla. Stat. § 607.01401(5) (emphasis added).

[8] See, e.g., Fla. Stat. § 607.0302 ("[E]very corporation . . . has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including without limitation power: (1) To sue and be sued, complain, and defend in its corporate name.").

The Seafarers also argue that Carnival Corporation & PLC should be estopped from denying that it is a corporation because it has publicly promoted itself as a single entity.  Indeed, they contend that Carnival Corporation & PLC "should not be allowed to argue the lack of formal creation of its DLC when it represents itself as a singular company. . . . Appellee should be estopped from denying this company's existence as a defense."[9]  Corporation by estoppel is a recognized theory in the state of Florida, having been codified at Section 617.1904:

> No body of persons acting as a corporation shall be permitted to set up the lack of legal organization as a defense to an action against them as a corporation, nor shall any person sued on a contract made with the corporation or sued for an injury to its property or a wrong done to its interests be permitted to set up the lack of such legal organization in his or her defense.

Fla. Stat. § 617.1904 (1997).  However, the theory is utilized infrequently, and when it is, it is applied to far different circumstances than those found here.  A prime example of such circumstances exists in Harry Rich Corp. v. Feinberg, 518 So.2d 377 (Fla. 3d DCA 1987), where a creditor sought to hold both a corporation and a corporate representative liable for a disputed contract.  When the creditor and representative negotiated the contract in question, the corporation -- unbeknownst to either the creditor or the representative -- had yet to be incorporated, creating a question as to who the creditor could pursue for the failed contract. Harry Rich,

---

[9] Reply Brief of Appellants at 4 & 6, Sabo v. CCL, No. 13-11765 (11th Cir. August 19, 2013).

518 So.2d at 378. The precise issue on appeal was whether the creditor could maintain an action against the corporate representative, but the appellate court also extensively discussed the doctrine of corporation by estoppel, which dictated that the corporation be held liable on the contract despite its non-existence at the time of contracting. Id. at 379-81. As the Harry Rich court explained, "[f]airness dictates that a creditor dealing with what it believes to be a corporation should be able to recover from that entity. . . . The doctrine of corporation by estoppel . . . provides the creditor with that opportunity." Id. at 381. In other words, the doctrine of corporation by estoppel is most appropriately used to maintain the expectations of parties to a contract, allowing a "corporation [to] sue and be sued as if it existed if the parties to the contract behaved as if it existed." Id. at 379.

A starkly different situation is before us here. The Seafarers entered into employment contracts with Cunard Celtic Hotel Services, Ltd., but now bring suit against Carnival Corporation & PLC, an entity which had no apparent involvement in the formation of their contracts. Indeed, the Seafarers have not alleged that they had reason to believe either that they were contracting with Carnival Corporation & PLC, or that Carnival Corporation & PLC was a legal entity capable of being sued. Absent such expectations, the Seafarers may not hold Carnival Corporation & PLC liable by way of corporation by estoppel. The doctrine is simply inapplicable to the facts alleged here.

## C.    Carnival Corporation & PLC is Not Suable as a Joint Venture

Finally, the Seafarers argue that DLCs are analogous to joint ventures, and attempt to graft the law of joint ventures onto DLCs, including Carnival Corporation & PLC.  Specifically, the Seafarers latch onto the notion -- articulated in cases such as Sutton v. Smith, 603 So.2d 693, 699 (Fla. 1st DCA 1992) -- that all the parties to a joint venture are subject to personal jurisdiction in a forum state when the joint venture contemplates and actually performs within that state.  In particular, the Seafarers contend as follows:

> Since a DLC is like a joint venture, but the parties to the DLC have an actual partnership and share everything they own, not just a single project, it stands to incontrovertible reason that a DLC which involves operating, conducting, engaging in, or carrying on the business of the DLC in Florida as comprehensively as Carnival Corporation & PLC does, places the DLC within the ambit of Fla. Stat. § 48.193(1)(a), satisfies due process requirements, and confers personal jurisdiction on the DLC's members.[10]

However, their joint venture argument is plagued by two major flaws.

First, despite the simple allure of their portrayal of the DLC as "a joint venture on steroids,"[11] the Seafarers' theory fails because a DLC simply does not equate to a joint venture.  In its most basic form, a Florida joint venture is "an association of persons or legal entities to carry out a single business enterprise for

---

[10] Brief of Appellants at 11, Sabo v. CCL, No. 13-11765 (11th Cir. June 10, 2013).

[11] Response in Opposition to Motion to Dismiss at 8, Sabo v. Carnival Corp., No. 12-22653 (S.D. Fla. Sept. 17, 2012).

profit." Florida Tomato Packers, Inc. v. Wilson, 296 So.2d 536, 539 (Fla. 3d DCA 1974) (emphasis added).  However, as the Seafarers themselves readily admit,[12] DLCs are more global and all-encompassing in purpose than are joint ventures. Consequently, a DLC cannot be deemed a joint venture for jurisdictional purposes. And it is of no consequence that the DLC and the joint venture are both collaborative in nature; the scopes of the two structures are diametrically distinct, thereby rendering inappropriate the application of Florida's joint venture laws to Carnival Corporation & PLC.

Second, even assuming arguendo that a DLC is properly treatable as a joint venture, the Seafarers would still only be able to reach the joint venture participants (i.e., Carnival Corporation and Carnival PLC) as a result of the joint venture's contacts with the state of Florida.  This is because the rule set forth in Sutton -- which forms the basis of the Seafarers' joint venture theory -- stands only for the proposition that the members of a joint venture, not the joint venture itself, are subject to a forum state's exercise of personal jurisdiction over them if the joint venture contemplates and actually involves performance in that state. Sutton, 603 So.2d at 698 ("We conclude that the sponsorship agreement, wherever made, created a joint business venture between Appellees and Sutton that contemplated

---

[12] Brief of Appellants at 11, Sabo v. CCL, No. 13-11765 (11th Cir. June 10, 2013) ("A DLC is somewhat like a joint venture, but the two parties share everything they own, not just a single project.").

13

and in fact involved significant performance in Florida and thereby subjected all parties to that joint venture, including Appellees, to personal jurisdiction by Florida courts in respect to causes of actions arising out of the joint venture activities in Florida.") (emphasis added).  This analysis makes sense, because a joint venture is not an independent legal entity, but rather a vehicle for limited collaboration between individual entities. See Florida Tomato Packers, Inc., 296 So.2d at 539 ("A joint venture has been defined as a special combination of two or more persons, who, in some specific venture, seek a profit jointly without the existence between them of any actual partnership, corporation, or other business entity.") (emphasis added).  In other words, a joint venture itself is not an entity that is properly subject to suit, which ultimately renders the Seafarers' joint venture argument meaningless as it relates to the question of whether Carnival Corporation & PLC is a properly suable entity.

## IV.    Conclusion

Our ruling today -- that Carnival Corporation & PLC is not properly suable in this action -- may appear, at first glance, to produce a harsh and unfair result. However, the Seafarers could have pressed their claims against another entity. Indeed, it seems abundantly clear that the Seafarers could have brought an action against Carnival PLC (the Cunard Line's parent company), but chose not to, instead making a tactical decision to pursue potentially broader claims against

14

Carnival Corporation & PLC.  The Seafarers rolled the dice in targeting Carnival Corporation & PLC exclusively in this case; unfortunately for them, that roll did not pay off.

**AFFIRMED**.