**STATELINE POWER CORP., formerly known as Southeast Diesel Acquisition Sub, Inc. Plaintiff,**

v.

**Richard KREMER, Defendant.**

**No. 04–21927–CIV.**

United States District Court, S.D. Florida, Miami Division.

Dec. 9, 2005.

Peter Marshall Reaman, Esq., Adorno & Yoss, Boca Raton, FL, for Plaintiff.

Michael Paul Bennett, Esq., Paul Aiello, Esq., Bennett Aiello Henry & McGuinness, Miami, FL, for Defendant.

### ORDER DENYING MOTION TO DISMISS AND MOTION TO TRANSFER

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Third Amended Complaint, filed September 21, 2005 (DE # 42)[1], and Defendant's Motion to Transfer Venue based on 28 U.S.C. § 1404(a) (DE # 45)[2], filed October 14, 2005.

Defendant moves to dismiss the above-styled action based on lack of personal jurisdiction, or, in the alternative, to dismiss Count III for failure to state a claim upon which relief may be granted.

By separate motion, Defendant moves to transfer venue to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).

### I. MOTION TO DISMISS

#### Background

Stateline Power Corp. ("Stateline") is a Florida corporation, with its principle place of business in Miami, Florida. Richard Kremer ("Kremer") is a citizen of the State of Ohio. On March 12, 2001, Stateline and Kremer entered into an Employment Agreement whereby Kremer was engaged to serve as Stateline's President. The Employment Agreement included a "governing law" clause which stated:

> Governing Law. This Agreement and the rights and obligations hereunder shall be governed by the State of Florida and the parties to this Agreement specifically consent to the jurisdiction of the courts of the State of Florida over any action arising out of or relating to this agreement.

Kremer worked as president of Stateline out of an office in Ohio. Although most of his contacts with Stateline in Florida were through electronic, written, and telephonic communications, Kremer traveled to Florida for business reasons at least two times during his employment with Stateline.

1. Plaintiff filed its response on October 7, 2005. Defendant filed his reply on October 21, 2005.

2. Plaintiff filed its response on November 1, 2005. Defendant filed his reply on November 8, 2005.

Stateline alleges Kremer breached the Employment agreement. Among other things, Stateline alleges Kremer submitted faulty financial reports to his superiors in Miami, Florida, intentionally expended in excess of $400,000.00 of Stateline's money to construct a warehouse on Kremer's personal property without consent or approval of the Board of Directors, and used Stateline's business credit card to make personal purchases unrelated to business operations of Stateline.

Stateline filed this case on or about June 16, 2004 in the Eleventh Judicial Circuit in and for Miami–Dade County, Florida. Kremer removed the case to this Court on July 30, 2004. On December 10, 2004, this Court's Final Order of Remand (DE # 18) Granted Plaintiff's Motion to Remand. This order was reversed and remanded by mandate of the Eleventh Circuit on June 23, 2005.

In the interim, the parties continued to litigate the above-styled action in Miami–Dade County Circuit Court. Defendant moved to dismiss based on lack of personal jurisdiction, forum non conveniens, and failure to state a cause of action on January 7, 2005. After limited discovery, full briefing, and oral arguments, the state court denied Defendant's Motion to dismiss for lack of personal jurisdiction and forum non conveniens. Defendant appealed this ruling to the Third District Court of Appeal.

In response to Defendant's current motion to dismiss, Plaintiff argues that the state court's denial of the previous motion to dismiss is now the law of the case. This Court finds that under the doctrine of law of the case, the state court's decisions deserve full faith and credit unless proven clearly erroneous. However, because personal jurisdiction is always a critical element of federal jurisdiction that can be challenged at any point in litigation, the Court conducted an independent review of this Court's jurisdiction over the Defendant.

## Standard of Review

■ When a federal court considers whether a plaintiff has established a prima facie case of personal jurisdiction over a nonresident defendant, the "court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits." *See Cable/Home Communication Corp. v. Network Prod.*, 902 F.2d 829, 855 (11th Cir. 1990).

## Discussion

### A. Personal Jurisdiction

■ In diversity cases, the court's analysis of the propriety of the assertion of jurisdiction is a two step inquiry. First, the court must determine whether the exercise of jurisdiction is proper under the state's long-arm statute. *Id.* Second, the court must determine whether there exist sufficient minimum contacts to satisfy the Due Process Clause of the Fourteenth Amendment. *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ Florida's long-arm statute provides that:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself, and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action from the doing of any of the following acts:

. . . . .

(b) Committing a tortious act within this state.

Fla. State. Ann. § 48.193(1)(b). Because the scope of the Florida long-arm statute is an issue of state law, this court must construe the long-arm statute as would the Florida Supreme Court. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627 (11th Cir.1996). When a State's highest appellate court has not ruled on an issue of law, federal courts applying state law are bound by the decisions of the state's intermediate appellate courts "absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir.1983).

The wording of subsection (1)(b) of the Florida long-arm statute allows for two possible constructions. The narrow interpretation, taken by some of the Florida district courts of appeal, concludes that section (1)(b) does not provide jurisdiction over someone who commits a tortious act outside the state resulting in injury inside the state. *See Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1216 (11th Cir.1999). Other Florida district courts of appeal have reached the opposite conclusion, adopting a broader interpretation of section (1)(b). *Id.* The Florida Supreme Court has not resolved this conflict between district courts of appeal. *Id.*

■ Normally, in the absence of a clear state law standard, this Court would attempt to discern how the Florida Supreme Court would rule. *See JB Oxford Holdings, Inc. v. Net Trade, Inc.,* 76 F.Supp.2d 1363, 1366 (S.D.Fla.1999). However, the Eleventh Circuit, in the absence of binding Florida Supreme Court precedent, has interpreted the long-arm statute to mean that a defendant who commits a tort outside of Florida that causes an injury within Florida is subject to personal jurisdiction under section (1)(b). *See Posner,* 178 F.3d at 1217. This Court now follows the Eleventh Circuit in finding that section (1)(b) of

the Florida long-arm statute provides for jurisdiction over a person who commits a tortious act that causes injury in the State of Florida, regardless of where that act took place.

■ Stateline alleges that Kremer breached his fiduciary duty to the company and misappropriated funds. In his notice of removal, Defendant states that Stateline "is a Florida corporation with its principle place of business located at 5820 N.W. 84th Avenue, Miami, Florida 33166." (Defendant's Notice of Removal from State Court, ¶ 2.) As such, any injury suffered by Stateline will be suffered in Florida. The Court finds that section (1)(b) of Florida's long-arm statute provides for personal jurisdiction over Kremer.

### B. Due Process Considerations

Even though a Defendant may fall within the jurisdiction contemplated by Florida's long-arm statute, this Court must still make a determination of whether exercising jurisdiction comports with Constitutional due process considerations. *See Posner,* 178 F.3d at 1220. Subjecting Kremer to jurisdiction in this Court does not offend due process considerations so long as minimum contacts exist between Kremer and Florida and "exercising jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (internal quotations omitted).

■ The Eleventh Circuit has adopted a three-part test to determine whether minimum contacts exist:

First, the contacts must be related to the plaintiff's cause of action ... Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum. Third, the defendants's contacts with the forum must be such that the defendant should reason-

ably anticipate being haled into court there.

*Id.* The Court finds that Kremer meets the Eleventh Circuit's test for minimum contacts. First, Kremer's contacts with Florida are related to the cause of action. Kremer's contacts involved several business trips to Florida and many electronic and telephonic communications. All of these related to his position as president of Stateline. His alleged breach of fiduciary duty as president provides the basis of the above-styled lawsuit. Second, Kremer purposefully availed himself to the privilege of conducting activities in Florida. Kremer negotiated to serve as president of a Florida corporation. Third, Kremer could reasonably anticipate being haled into court in Florida. The Employment Agreement between Stateline and Kremer provided that the parties "specifically consent to the jurisdiction of the courts of the State of Florida over any action arising out of or relating to this agreement."

■■ Finally, the Court finds that exercising jurisdiction over Kremer dose not offend "traditional notions of fair play and substantial justice." Factors the Court must consider in making this determination are: the burden on Kremer of defending the suit in Florida; Florida's interest in adjudicating the suit; Stateline's interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interest of the states in furthering shared substantive policies. *See Posner,* 178 F.3d at 1221. Florida and Stateline both have a strong interest in seeing this dispute resolved in Florida, as the suit alleges serious injuries to a Florida corporation caused by its foreign president. The burden of Kremer in defending the above-styled suit in Florida is mitigated by "modern methods of transportation and communication," *id.,* as well as by the fact that Kremer agreed and negotiated to serve as president of a Florida corporation. Final-

ly, Kremer has not shown that exercising jurisdiction will thwart efficient use of resources in the interstate judicial system or the interest of the states in furthering shared policies. The Court finds that exercising jurisdiction over Kremer does not offend "traditional notions of fair play and substantial justice."

### C. Economic Loss Rule

Defendant argues that Count III of the second amended complaint, which alleges breach of fiduciary duty, is barred by Florida's economic loss rule. Defendant contends that the losses related to breach of fiduciary duty arise out of the same employment contract as the Count I breach of contract claim. In 1991, the Eleventh Circuit held that Florida's economic loss rule barred breach of fiduciary duty claims where the relationship between the parties arose out of a contract. *See Interstate Securities Corp. v. Hayes Corp.,* 920 F.2d 769, 776–77 (11th Cir.1991). After the *Interstate Securities* decision, the Florida Supreme Court stated that the economic loss rule "was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy consideration are substantially identical to those underlying the product liability type analysis." *Moransais v. Heathman,* 744 So.2d 973, 983 (Fla. 1999). Further, the Court stated the rule "should not be invoked to bar well-established causes of actions in tort...." *Id.*

In light of the Florida Supreme Court's Decision in *Moransais,* Florida's Third District Court of Appeals has twice ruled that the economic loss rule does not bar breach of fiduciary duty claims. In an unpublished 1999 decision, the Third DCA noted that, although the Eleventh Circuit had held the economic loss rule bars a breach of fiduciary duty claim, "[a]fter *Moransais, Interstate Securities* and its

progeny cannot be regarded as good law on this point." *See First Equity Corp. v. Watkins,* 24 Fla. L. Weekly D1758, 1999 WL 542639, *1, n.*** (Fla. 3d DCA; July 28, 1999). In 2000, another Third DCA opinion held that, *"Moransais* makes it clear that the economic loss rule has not abolished the cause of action for breach of fiduciary duty, even if there is an underlying oral or written contract." *Invo Fla., Inc. v. Somerset Venturer, Inc.,* 751 So.2d 1263, 1267 (Fla. 3d DCA 2000).

At least two Judges of the Southern District of Florida have followed the Third DCA in holding that Florida's economic loss rule does not bar a breach of fiduciary duty claim. Judge Ryskamp noted that the Third DCA explicitly stated *Interstate Securities* was no longer good law and held that the Southern District of Florida was bound by the *First Equity* holding. *See Crowell v. Morgan Stanley Dean Witter Services, Co.,* 87 F.Supp.2d 1287, 1293 (S.D.Fla.2000). More recently, Judge Altonaga cited *Invo Florida, Inc.,* in holding, "Plaintiffs' claim for breach of fiduciary duty 'is one of those well-established torts' which remains viable, 'even if there is an underlying oral or written contract.'" *See Maliner v. Wachovia Bank, N.A.,* No. 04–60237–CIV, 2005 WL 670293, *8 (S.D.Fla. 2005).

■ In the above-styled case, Count III arises out of the common law rule against breach of fiduciary duty, not solely out of the Employment Agreement. Defendant's fiduciary duties to the Plaintiff arose from his employment status and were not all specifically delineated in the Employment Agreement. The Court finds that Florida's economic loss rule does not bar Count III of the Second Amended Complaint.

## II. MOTION TO TRANSFER

■ By separate motion, Defendant moves to transfer venue to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). Because parties agree this action "might have been brought in Ohio," the Court considers a number of factors in determining whether transfer to the Southern District of Ohio is appropriate. Among these factors are: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to **compel** the presence of unwilling witnesses; (5) the cost of obtaining the presence of the witnesses; and (6) the public interest. *See Jewelmasters, Inc. v. May Dep't Stores Co.,* 840 F.Supp. 893, 894 (S.D.Fla.1993). In addition to these factors, the parties make various arguments about the weight that should be given to the contract's forum selection clause and the speed at which the case might go to trial in the two venues.

■ Defendant argues that because the Eleventh Circuit found the language of the contract's forum selection clause to be permissive, the Court should not consider the clause when deciding whether to transfer the case. Although the clause, to the extent that Plaintiff could have brought the suit in a different venue, is permissive, the Court takes notice of the fact that Defendant specifically consented to having disputes litigated in the Courts of Florida. Although this alone is not dispositive, the forum selection clause suggests that, at the time of signing the contract, Defendant did not consider the possibility of litigating in Florida to be impermissibly inconvenient.

■ Second, Defendant argues that the above-styled action might be adjudicated more quickly in the Southern District of Ohio than in the Southern District of Florida. In the twelve month period ending September 30, 2004, the average time for a case to go from filing to trial in the Southern District of Ohio was twenty-six (26)

months. *See* Federal Court Management Statistics, Administrative Office, United States Courts (2004). The average time from filing to trial in the Southern District of Florida was seventeen and a half (17.5) months. *Id.* Further, the above-styled action has previously been set for trial before the undersigned Judge on the two week Calendar commencing June 5, 2006. The parties have been on notice of this trial date since June 30, 2005.

 The 28 U.S.C. § 1404(a) factors do not overcome the Court's reasoning above. As for the convenience of the parties, the Plaintiff has chosen Florida as its preferred forum to litigate. By signing the forum selection clause and agreeing to serve as CEO of a Florida Corporation, the Defendant lost his ability to validly assert inconvenience in litigating a case in Florida.

 Defendant also argues that many of the witnesses live in Ohio. However, Defendant merely lists the potential Ohio witnesses. Absent a showing of the necessity of Ohio witnesses who refuse to testify and are outside this Court's subpoena power, the presence of some Ohio does not necessitate transfer. Further, Plaintiff lists several of the key witnesses in the case as being Florida residents. In addi-

tion to the location of the witnesses, the Court has considered the location of documents and other evidence and finds that Defendant has not made a showing substantial enough to warrant transfer.

 Finally, Defendant argues that public interest favors a transfer of the case to Ohio. For the same reasons discussed relating to personal jurisdiction, the Court finds that Florida has a strong interest in adjudicating cases involving Florida corporations. The Court therefore finds that transfer is not appropriate.

### III. CONCLUSION

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is ORDERED and ADJUDGED that Defendant's Motion to Dismiss Third Amended Complaint (**DE # 42**) be, and the same is hereby, **DENIED.** The Defendant shall answer the complaint within twenty (20) days.

It is further ORDERED and ADJUDGED that Defendant's Motion to Transfer Venue (**DE # 45**) be, and the same is hereby, **DENIED.**