**VAS AERO SERVICES, LLC, Plaintiff,**

v.

**Phillip ARROYO, Defendant.**

Case No. 12–CV–80484.

United States District Court,
S.D. Florida,
West Palm Beach Division.

June 20, 2012.

Andrew Michael Loewenstein, Akerman Senterfitt, West Palm Beach, FL, Christopher Stephen Carver, Akerman Senterfitt, Miami, FL, Jason Samuel Oletsky, Akerman Senterfitt, Ft. Lauderdale, FL, for Plaintiff.

S. Jonathan Vine, Cole Scott & Kissane, West Palm Beach, FL, for Defendant.

### ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (DE 11) ("Motion"), filed May 9, 2012. On May 17, 2012, I held a hearing on Plaintiff's Motion for Temporary Restraining Order and for Prelimi-nary Injunction ("Motion for TRO") (DE 4), and, the next day, I entered an Order Granting Plaintiff's Motion for TRO. One of the issues raised prior to the hearing, which the Court addressed during the hearing, was whether this Court could exercise personal jurisdiction over Defendant, a resident of the state of Washington. After carefully reviewing Plaintiff's Motion, Defendant's Response, Plaintiff's Reply, and considering the evidence presented at the hearing, I informed the Parties that I found the Complaint contained a sufficient factual basis to permit this Court to exercise jurisdiction over Defendant.

### I. Background

On May 2, 2012, Plaintiff, VAS Aero Services, LLC, ("VAS") brought this action in the Southern District of Florida against its former employee, Defendant Phillip Arroyo ("Arroyo") for misappropriating trade secrets and other related claims arising out of Arroyo's purported unauthorized removal of VAS documents containing both VAS's and its clients' confidential and proprietary information. (See DE 1). Purportedly, Arroyo began unlawfully removing these confidential documents shortly before he left VAS to work for one of VAS's biggest competitors, GA Telesis, LLC ("GA").

VAS, a Delaware limited liability company, is a "leading provider of aftermarket services in the aviation industry" (id. at ¶ 6) with its principal place of business and headquarters in Boca Raton, Florida (id. at ¶¶ 2–3). One key aspect of VAS's business model is its redistribution program (id. at ¶ 8), which VAS created to benefit its existing clientele. Essentially, VAS's clients consign to VAS their excess aircrafts and parts, VAS strips the aircrafts, locates a potential buyer for the parts, arranges the sale, and splits the proceeds

of the sale with its client. (DE 1 at ¶¶ 8–9).

Arroyo allegedly worked for VAS or its predecessors from December 13, 1999, until May 19, 2012. (*Id.* at ¶¶ 18; 36). In early 2010, VAS asserts it approached the Boeing Company ("Boeing"), VAS's key client (*id.* at ¶ 10), about expanding their relationship into the military and defense industry. (*Id.* at ¶ 19). Due to the relationships Arroyo established with individuals at Boeing during his employment at VAS, VAS alleges it promoted Arroyo to Director of Sourcing of its new Military and Defense Division. (*Id.* at ¶ 20). As director, Arroyo's responsibilities included managing the Boeing–VAS programs. (*Id.* at ¶ 20).

Due to his position as director, Arroyo served as the point of contact for the Boeing account. (DE 1 at ¶ 22). As the point of contact, Arroyo received and had access to both VAS's and Boeing's confidential, proprietary, and trade secret information; including, but not limited to, the Boeing–VAS master agreement ("Master Agreement") and all addenda. (*Id.* at ¶ 22). During the hearing, VAS's General Counsel Kevin P. Hartney ("Hartney") testified that the Master Agreement and addenda include both VAS's and Boeing's trade secrets, including, but not limited to, delivery terms, pricing structures, details about how the planes were stripped for military use, warehousing and storage conditions, and profit allocation. (*Id.* at ¶¶ 11; 14).

Prior to his termination on March 19, 2012, VAS alleges Arroyo misappropriated numerous confidential documents, including the Master Agreement and addenda, from VAS. Arroyo allegedly misappropriated the documents in the following ways: (1) by removing hard copies of the documents from the VAS–Boeing joint facility in Kent, Washington ("Kent Facility"); (2) by downloading the documents to numerous USB devices; and (3) by emailing himself the documents.

The documents Arroyo allegedly misappropriated contained confidential and proprietary information. For example, the "LN 923 Disassembly Estimate–Draft 11–28–11.doc." includes all VAS's disassembly times and cost estimates for stripping a plane. Hartney testified that if a competitor of VAS could obtain this information, VAS could be outbid on current, as well as, future projects. Additionally, Hartney stated under oath that Boeing requires VAS to keep any information relating to the tear-down of Boeing's planes confidential because the release of this information could pose risks to Boeing's business. While VAS asserts all the documents Arroyo downloaded contained trade secrets, Hartney stated the "Copy of Programs Sales Gross Profit Jan–March 122012.-xlsx", is the most sensitive document VAS possesses because it contains all of VAS's pricing information and margins.

Before filing the instant Complaint, VAS alleges it sent Arroyo a demand letter on March 23, 2012, requesting Arroyo return VAS's confidential, proprietary, and trade secret information. (*See* DE 1 at ¶ 56). After Arroyo failed to return the documents, VAS filed its Complaint against Arroyo seeking both damages and injunctive relief for the following claims: (1) misappropriation of trade secrets; (2) breach of the duty of loyalty; and (3) conversion.

Arroyo contends the Southern District of Florida lacks the authority to exercise personal jurisdiction over him because VAS's Complaint fails to satisfy the jurisdictional requirements set forth Florida's long-arm statute, alternatively, Arroyo argues exercising personal jurisdiction over him would offend the due process clause. (*See* DE 11). After considering the record, I disagree.

## II. Analysis

### A. Legal Standard

■ A district court determines whether personal jurisdiction exists by determining the following: (1) whether the complaint alleges sufficient facts to permit service of process on the foreign defendant under the state's long-arm statute and (2) whether the assertion of personal jurisdiction over the defendant would violate due process. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.2009).

■ "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Id.* (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999)). The plaintiff bears the burden of establishing a prima facie case that the defendant is subject to personal jurisdiction in the forum state. *Id.* A plaintiff establishes a prima facie case establishing personal jurisdiction over a non-resident defendant when he presents sufficient evidence to withstand a motion for directed verdict. *See Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (citing *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir.2006)). "The defendant then must raise[ ], through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Id.* (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (internal quotation marks omitted)). If a defendant rebuts plaintiff's prima facie case that he is subject to personal jurisdiction in the forum state, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.* (citing *Sculptchair, Inc.*, 94 F.3d at 627).

### 1. The Florida Long–Arm Statute

■ The reach of Florida's long-arm statute is a question of Florida law; therefore, a district court must construe the statute as if it were the Florida Supreme Court. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.2009). When the Florida Supreme Court is silent on an issue, a "[f]ederal court[ ] applying state law [is] bound by the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Stateline Power Corp. v. Kremer*, 404 F.Supp.2d 1373, 1377–78 (S.D.Fla.2005) (quoting *Silverberg v. Paine, Webber, Jackson, & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir.1983)) (internal quotation marks omitted). When determining whether a plaintiff alleges sufficient facts to invoke the Florida long-arm statute, a Florida court must look to the allegations set forth in the complaint. *See Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 500 (Fla.1989).

■ VAS asserts this Court can exercise either specific or general jurisdiction over Arroyo. After considering the facts alleged in VAS's Complaint, I find Arroyo is subject to personal jurisdiction pursuant to section 48.193(1)(b), which provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

. . .

(b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(b) ["section (1)(b)"]; *see* DE 1 at ¶ 9 (asserting that Arroyo is subject "to personal jurisdiction ... because he caused injury to VAS ... in this state by virtue of acts committed within and outside of Florida"). VAS contends Arroyo's tortious actions satisfy the requirements of section 1(b) because his decision to misappropriate VAS's confidential files injured VAS, a Florida-based company. In response, Arroyo argues the actions he allegedly engaged in are insufficient to satisfy section 1(b) because "each of the alleged actions described in [VAS]'s Complaint took place in Washington." (DE 11 at 3). In order to determine whether VAS's allegations are sufficient to establish specific jurisdiction under section 1(b), I turn to the applicable case law.

Except for the allegation that Arroyo removed confidential documents from the Kent Facility, Arroyo purportedly misappropriated the other documents by using the internet. Since the proliferation of the internet, the Florida Supreme Court has rarely addressed whether a defendant's internet activity can be sufficient to serve as a basis for personal jurisdiction in Florida. In fact, as of 2009, the Florida Supreme Court never ruled on "the application of the state long-arm statute to" internet activity. *See Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1294 (11th Cir.2009). In *Marshall,* the Supreme Court of Florida intentionally refrained from deciding "the broader issue[ ] of whether injury alone satisfies the requirement of section 48.193(1)(b)" even though it "recognize[d] that the federal courts ... hold[ ] that the commission of a tortious act out of state that causes an injury to an in-state resident satisfies Florida's long-arm statute." *Internet Solutions Corp. v. Marshall,* 39 So.3d 1201, 1206 n. 6 (Fla.2010). Since *Marshall,* the Florida Supreme Court has not addressed whether injury alone satisfies the requirements of section 1(b).

Accordingly, since the Florida Supreme Court is silent regarding how broadly a court should interpret section 1(b) and the Florida intermediate appellate courts are split on this issue, *see, e.g., Elandia Intern., Inc. v. Ah Koy,* 690 F.Supp.2d 1317, 1328–29 (S.D.Fla.2010) (citing *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1216 (11th Cir.1999)), I am bound to follow Eleventh Circuit precedent which has consistently applied "the broader construction of subsection 1(b)." *Elandia Intern., Inc. v. Ah Koy,* 690 F.Supp.2d 1317, 1329 (S.D.Fla. 2010) (citation omitted); *see, e.g., Licciardello v. Lovelady,* 544 F.3d 1280 (11th Cir.2008) (finding a district court has personal jurisdiction over a non-resident defendant under section 1(b) when the defendant allegedly infringed upon plaintiff's trademark by posting a photo of plaintiff, including plaintiff's trademark, on his website in Tennessee); *see also, Posner v. Essex Ins. Co.,* 178 F.3d 1209 (11th Cir. 1999) (finding a district court has personal jurisdiction over a non-resident defendant under section 1(b), if the defendant's actions outside Florida tortiously interfered with plaintiff's ability to receive insurance payments from a policy covering his land in Florida). The Eleventh Circuit's broad construction of section 1(b) permits a court to exercise personal jurisdiction over a non-resident defendant if the defendant's purported commission of a tort outside Florida causes injury inside Florida. *See Elandia Intern., Inc. v. Ah Koy,* 690 F.Supp.2d 1317, 1329 (S.D.Fla.2010); *see also Licciardello v. Lovelady,* 544 F.3d 1280, 1283 (11th Cir.2008) (reiterating that the Eleventh Circuit has repeatedly "held that § 48.193(1)(b) of the Florida long-arm statute permits jurisdiction over the non-resident defendant who commits a tort outside of the state that causes injury inside the state"); *see also Posner,* 178 F.3d at 1217 ("Absent a contrary decision by ... [the Florida Supreme] Court, however,

we are bound in this case to follow this court's firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida.").

Bearing this precedent in mind, VAS's allegations that Arroyo intentionally engaged in tortious conduct in Washington that caused injury to VAS in Florida are sufficient to satisfy the requirements of section 1(b). Indeed, if the allegations in the Complaint are true, Arroyo's conduct was intentionally directed at VAS, a Florida-based company, and the harm his actions caused was felt primarily—if not exclusively—in Florida. Based on these facts, VAS's allegations are sufficient to establish this Court's personal jurisdiction over Arroyo through section 1(b). Arroyo fails to rebut VAS's prima facie case of personal jurisdiction, accordingly, VAS's Complaint states sufficient facts to permit service of process upon Arroyo.

### 2. Constitutional Due Process

In addition to establishing that a state's long-arm statute would permit service of process upon a defendant, a plaintiff must also demonstrate that a defendant "has certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.,* 552 F.3d 1324, 1329 (Fed.Cir.2008) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Thus, in order to determine whether the due process clause permits the exercise of personal jurisdiction over Arroyo, I must determine whether Arroyo purposefully established constitutionally sufficient contacts with the state of Florida, and, if so, whether exercising jurisdiction over Arroyo comports with fair play and substantial justice.

### A. Arroyo's Contacts with Florida

Arroyo contends sufficient minimum contacts do not exist to permit this Court to exercise personal jurisdiction over him. (*See* DE 11 at 11–12). However, a single act, such as the commission of an intentional tort, may support the exercise of personal jurisdiction over a nonresident defendant who has no other contacts with the forum. *See Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). If the allegations in the Complaint are true, Arroyo committed several intentional torts against VAS by intentionally removing and copying VAS's confidential and proprietary information. Assuming these accusations are true, Arroyo intentionally stole these documents for the purpose of using them at his new position at GA, VAS's competitor, to enable GA to underbid VAS. As a VAS employee for almost thirteen years, Arroyo would unquestionably be aware that any tortious conduct expressly aimed at VAS, a Florida-based company, would cause injury in Florida. Thus, these allegations of intentional misconduct are sufficient to establish Arroyo's contacts with Florida are sufficient.

### B. Fair Play and Substantial Justice

Having ruled that Arroyo engaged in constitutionally sufficient contact with Florida to permit service upon him, I must consider whether the exercise of jurisdiction over him comports with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe,* 326 U.S. at 320, 66 S.Ct. 154) (internal quotations omitted). A district court may weigh the following relevant factors: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient res-

olution of controversies," and (5) any "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

 "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477, 105 S.Ct. 2174 (citing to *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). However, "where a defendant who purposefully ... directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

Arroyo failed to present a compelling case that this Court's decision to assert jurisdiction over him would be unreasonable. Even if Arroyo had presented a compelling case, after considering the record, I find Florida has a strong interest in affording its residents the ability to obtain relief from a non-resident's intentional misconduct that causes injury in Florida.

## III. Conclusion

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (DE 11) is **DENIED.**