[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 5, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-16733

_____

D. C. Docket No. 04-20602-CV-MGC

HOWARD CAMERON STUBBS,

Plaintiff-Appellant,

versus

WYNDHAM NASSAU RESORT AND
CRYSTAL PALACE CASINO, a
Bahamian company,
WHC FRANCHISE CORPORATION,
CRYSTAL PALACE U.S. INC.,

Defendants-Appellees,

WYNDHAM INTERNATIONAL, INC.,
a foreign company,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 5, 2006)**

Before BLACK, BARKETT and COX, Circuit Judges.

BARKETT, Circuit Judge:

Howard Stubbs appeals the dismissal of his complaint against Wyndham Nassau Resort and Crystal Palace Casino ("Nassau Resort") and WHC Franchise Corporation ("WHC") (collectively, "Defendants"). The district court dismissed the complaint on the grounds that the Defendants did not have sufficient contacts with the state of Florida to assert personal jurisdiction over them.

The complaint arises out of a diving accident in which Howard Stubbs, a resident of Mississippi, was severely injured when he dove into the shallow end of a swimming pool at the Nassau Resort, located in Nassau, Bahamas. Stubbs sued Nassau Resort, a Bahamian company, and WHC, Nassau Resort's franchisor and a Delaware Corporation with its principal place of business in Texas,[1] claiming they were negligent for installing poor lighting, having poor safety markings, improperly inspecting and repairing defective conditions, and failing to provide a lifeguard. The complaint asserted original subject matter jurisdiction through diversity of citizenship pursuant to 28 U.S.C. § 1332. The complaint asserted general personal jurisdiction over the Defendants under Florida's long-arm statute, Fla. Stat. § 48.193(2), on the basis that they engaged in "substantial and not

---

[1] The complaint named Wyndham International, Inc. ("Wyndham"), and not WHC. On August 25, 2004 the parties signed a stipulation replacing Wyndham with WHC.

2

isolated interstate and intrastate activity in Florida."

The Defendants jointly moved to dismiss the complaint. In the motion, Nassau Resort contested personal jurisdiction, alleging that it had insufficient contacts with Florida, and also asserted improper venue and forum non conveniens. WHC moved to dismiss on the sole basis that it was an improper party because it exercised no control over and held no interest in Nassau Resort.[2] In support of the motion to dismiss, Nassau Resort filed several affidavits, including those of Robert Sands, General Manager of Nassau Resort, and Michael Pramshafer, Vice President of Crystal Palace U.S., Inc., a corporation marketing Nassau Resort. Stubbs responded with affidavits and a series of documents, including a list of Nassau Resort's Florida-based vendors (hundreds of pages long), invoices, checks, advertisements, and bank account statements. The district court did not hold a hearing, but considered the affidavits and documents presented by both parties. The court dismissed the complaint against the Defendants on the grounds that personal jurisdiction could not be obtained against either defendant because they lacked sufficient contacts with the state of Florida. The court did not address any other issue.

---

[2] The motion to dismiss was filed by Wyndham before the August 25, 2004 stipulation.

3

## STANDARD OF REVIEW AND BURDEN OF PROOF

We review the district court's dismissal for lack of personal jurisdiction de novo, Olivier v. Merritt Dredging Co., 979 F.2d 827, 830 (11th Cir. 1992), and we accept as true the allegations in the complaint.  Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999); Cable/Home Communication v. Network Prod's, 902 F.2d 829, 855 (11th Cir. 1990).  Stubbs, as the plaintiff, has the burden of establishing a prima facie case of personal jurisdiction.  Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002).  "'A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.'"  Id. at 1269 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).

Where, as here, the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.  Id.  Where Stubbs' complaint and supporting affidavits and documents conflict with the Defendants' affidavits, we must construe all reasonable inferences in favor of the plaintiff, Stubbs.  Id.

4

## DISCUSSION

We review personal jurisdiction as it relates to each defendant separately.

### I. Nassau Resort

A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution. Id. at 1269. Thus, we must determine whether Nassau Resort's activities and contacts in Florida satisfy Florida's long-arm statute to obtain personal jurisdiction, id.; Cable/Home Communication, 902 F.2d at 855, and also whether sufficient "minimum contacts" existed between Nassau Resort and Florida so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. Id. at 855.

Stubbs argues that Nassau Resort is subject to personal jurisdiction under the general jurisdiction provision of Florida's long-arm statute.[3] Florida's general jurisdiction provision states:

---

[3] Personal jurisdiction can arise specifically or generally from a defendant's contacts in the state. General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated, Meier, 288 F.3d at 1269, while specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint, Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). If a defendant is subject to the general jurisdiction of the court, the defendant must respond in that court to any cause of action, regardless of where the cause of action arose. There is no issue in this case that Stubbs seeks to assert general, and not specific, jurisdiction over the Defendants. This case involves only personal general jurisdiction and not specific personal jurisdiction.

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2). This provision allows the district court to assert general personal jurisdiction over a nonresident defendant, who has "substantial and not isolated activity within" Florida, even when that activity is unrelated to the cause of action being litigated. Consolidated Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000).

Because the long-arm statute is governed by Florida law, we are required to construe it as would the Florida Supreme Court. Cable/Home Communication, 902 F.2d at 856. In order to establish that Nassau Resort was engaged in substantial and not isolated activity in Florida, the activities of Nassau Resort must be "'considered collectively and show a general course of business activity in the State for pecuniary benefit.'" Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996) (quoting Dinsmore v. Martin Blumenthal Assocs., Inc., 314 So. 2d 561, 564 (Fla. 1975)); April Indus., Inc. v. Levy, 411 So. 2d 303, 305 (Fla. Dist. Ct. App. 1982) (holding that § 48.193(2) requires "a general course of business activity in the state for pecuniary benefit").

In this case, Stubbs asserts that the requisite contacts for general personal jurisdiction existed by virtue of both direct contacts between Nassau Resort and

6

Florida, and indirect contacts between Nassau Resort and Florida through Crystal Palace U.S., Inc., a Florida corporation. We have held that a parent and subsidiary are separate and distinct corporate entities, and the presence of one in a forum state may not necessarily be attributed to the other. Consolidated Development Corp., 216 F.3d at 1292. However, "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." Meier, 288 F.3d at 1272 (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002)). Moreover, our precedent concerning parents and subsidiaries has been extended to other principal-agent relationships, when the resident corporation acts on behalf of its foreign affiliates. Id. at 1273.

We find that this case is controlled by Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002). In Meier, the plaintiff, an out of state resident, was struck by a commercial motorboat while snorkeling in the Bahamas. He brought an action against several Bahamian corporations affiliated with a hotel where the motorboat owner conducted business. The plaintiff argued

7

that the United States District Court for the Southern District of Florida had general personal jurisdiction over the nonresident corporations, as the corporations conducted substantial business activity directly and indirectly through Florida subsidiaries. Id. at 1272. The plaintiff submitted affidavits claiming that the hotels listed a Florida telephone number on advertisements, held several bank accounts in Florida, and maintained an attorney agent in Florida. Moreover, the plaintiff submitted evidence that the Florida subsidiaries solicited and coordinated reservations for the nonresident corporations, including the hotel responsible for the motorboat. The Florida subsidiaries also coordinated over fifty percent of all guests at the hotel in 1999, the majority of whom were from the United States.

In reversing the district court, we held that the financial ties between the nonresident corporations and the Florida subsidiaries suggested a relationship, in which the Florida subsidiaries were "mere instrumentalities" of the nonresident defendant. Id. at 1273-75. Specifically, we ruled that "[t]he court may extend jurisdiction to any foreign corporation where the affiliated domestic corporation 'manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation.'" Id. at 1273 (quoting State v. Am. Tobacco Co., 707 So. 2d 851, 855 (Fla. Dist. Ct. App. 1998)). Because the Florida subsidiaries conducted business solely for the nonresident corporations, including

the hotel, we held that their activities could be imputed to the nonresident corporations. We also ruled that those activities established sufficient contacts with the forum state to warrant asserting general personal jurisdiction over them. Id. at 1275.

Similar to the subsidiaries in Meier, Crystal Palace acted as an advertising and booking department for Nassau Resort. In his affidavit, Michael Pramshafer, Vice President of Crystal Palace confirmed that Crystal Palace "operates solely for the purpose of national marketing for Ruffin's Crystal Palace Hotel Corporation, Limited . . . [and] markets and schedules reservations for [Nassau Resort]." Moreover, "[r]evenues generated for the Nassau Resort through Crystal Palace U.S., Inc.'s marketing are realized at the Nassau Resort." Nassau Resort also listed Crystal Palace's Ft. Lauderdale address on an overwhelming number of advertisements and checks it drafted from several Florida-based bank accounts.[4] Similar to the relationship between the Florida subsidiaries and the nonresident corporations in Meier, we find the relationship between Crystal Palace and Nassau Resort was such that Crystal Palace was an "agent" of Nassau Resort, and its activities may be used as the basis to assert general jurisdiction over Nassau Resort. Moreover, the activities of Crystal Palace reveal contacts with Florida at

---

[4] Stubbs submitted numerous checks and advertisements as part of a two-volume appendix responding to the motion to dismiss.

least equivalent to those manifested in Meier to assert personal jurisdiction over Nassau Resort.

In addition to the indirect contacts Nassau Resort had with Florida through Crystal Palace, however, Nassau Resort also had direct contacts with Florida. The affidavits and documents before the district court reflected that Nassau Resort maintained numerous separate commercial relationships with Florida-based entities, including travel and vacation agencies, lawyers, insurance brokers, advertisers, and a host of construction and home decor companies. Furthermore, a significant portion of Nassau Resort's vendors operated in Florida. Nassau Resort held at least six bank accounts in Florida through which it issued over 1,600 checks in the fourteen months before the district court's ruling.[5] As the district court noted, the checks were for "disbursements to U.S. vendors, paying salaries to employees who are U.S. citizens, and for receipt of U.S. customers," including several Florida entities.[6]

---

[5] While Nassau Resort is correct in noting that the bank accounts alone are insufficient to sustain a finding of personal jurisdiction, they are one indication of minimum contacts. In the cases cited by Nassau Resort to support its position that bank accounts alone are insufficient, the bank accounts were the defendants' sole contact with the state. See, e.g., La Reunion Francaise v. La Constena, 818 So. 2d 657, 659 (Fla. Dist. Ct. App. 2002); Semi Conductor Materials, Inc. V. Citibank Int'l PLC, 969 F. Supp. 243 (S.D.N.Y. 1997) (also noting that the bank relationship was between a foreign bank and a New York financial institution – not a business entity paying vendors through business in the state, like the instant case).

[6] In an affidavit filed on behalf of Nassau Resort, Robert Sands conceded that Nassau Resort held six Florida-based bank accounts, three of which were used to disburse funds, including payment to many employees and vendors in Florida.

For the foregoing reasons, we conclude that Stubbs has adequately shown that Nassau Resort was "engaged in substantial and not isolated activity" within Florida through its direct and indirect contact with Florida. Accordingly, Stubbs has made a sufficient showing that general personal jurisdiction existed over Nassau Resort under Florida's long-arm statute. Meier, 288 F.3d at 1273-74.

These contacts are likewise sufficient to satisfy the federal Due Process Clause requirements of "minimum contacts" and "traditional notions of fair play and substantial justice." In order to make a finding of minimum contacts with the state, the contacts must involve some purposeful availment "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Hanson v. Denckla, 357 U.S. 235, 253 (1958). When reviewing general jurisdiction for purposes of the Due Process Clause, we have held that the plaintiff must set forth how the "subsidiary's existence was simply a formality, and that the affiliated corporation was merely the non-resident's agent." Meier, 288 F.3d at 1275. Based on the facts set forth above, we find that the relationship between Nassau Resort and Crystal Palace sufficiently justifies finding Crystal Palace served as Nassau Resort's agent. Id. (holding that services rendered by Florida

11

subsidiaries were sufficiently important that the nonresident corporations would perform the equivalent services if the subsidiaries did not exist) (citing Wiwa v. Royal Dutch Petroleum, Co., 226 F.3d 88, 95 (2d Cir. 2000)).  Moreover, as set forth above, Nassau Resort, maintained numerous direct business relationships in Florida.  Accordingly, we find that Stubbs has sufficiently established that Nassau Resort had continuous and systematic contacts with the forum state through direct and indirect activities through Crystal Palace.[7]

We also find that the exercise of personal jurisdiction over Nassau Resort comports with "fair play and substantial justice."  Burger King Corp., 471 U.S. at 476 (quoting International Shoe v. Washington, 326 U.S. 310, 320 (1945)).  While we are mindful of the "unique burdens placed upon one who must defend oneself in a foreign legal system," Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 114 (1987), these burdens are largely absent in this case.  Although Nassau Resort is a Bahamian corporation, it has been utilizing a corporate office in Ft.

---

[7] We have held that:

> The 'substantial and not isolated activity' requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due Process Clause as discussed in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-16, 104 S. Ct. 1868, 1872-73 & n. 9, 80 L. Ed.2d 404 (1984).

Meier, 288 F.3d at 1269 n.6 (citation omitted).

12

Lauderdale to market vacations for Nassau Resort. Moreover, it conducts a significant amount of business in Florida, including associations with numerous vendors. While many of its employees may reside outside of Florida, modern methods of transportation and communication have significantly alleviated any burden this might entail. McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957). Based on Florida's interest in overseeing marketing of safe enterprises and businesses conducting significant activities in the state, and in adjudicating disputes arising from injuries which occur at or as a result of resorts marketing in Florida, we have no difficulty concluding that exercising personal jurisdiction over Nassau Resort comports with traditional notions of substantial justice and fair play. See Meier, 288 F.3d at 1264 (holding that Florida has an interest in adjudicating disputes that arise from injury at Caribbean resort because millions of tourists travel to the Caribbean resorts from Florida); Asahi, 480 U.S. at 114 ("When minimum contacts have been established, often the interests of the plaintiff and the forum . . . will justify even the serious burdens placed on the alien defendant.").

## II. WHC

Federal Rule of Civil Procedure 12(h) states unequivocally that a claim based on a "lack of jurisdiction over the person . . . is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading or an

13

amendment thereof permitted by Rule 15(a) . . . ." Fed. R. Civ. P. 12(h). Thus, we have held that "[i]t is well-settled that lack of personal jurisdiction is a waivable defect, and that a defendant waives any objection to the district court's jurisdiction over his person by not objecting to it in a responsive pleading or a [motion to dismiss pursuant to Federal Rule of Civil Procedure 12]." Palmer v. Braun, 376 F.3d 1254, 1259 (11th Cir. 2004) (citing Lipofsky v. New York State Workers Comp. Bd., 861 F.2d 1257, 1258 (11th Cir. 1988)). In this case WHC's motion to dismiss was entitled:

DEFENDANTS' MOTION TO DISMISS
DEFENDANT WYNDHAM INTERNATIONAL, INC. AS IMPROPER PARTY
AND DEFENDANT WYNDHAM NASSAU RESORT AND CRYSTAL
PALACE CASINO'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION, IMPROPER VENUE, AND FORUM NON CONVENIENS.

Likewise, the memorandum of law attached to the motion argues only that WHC, as a franchisor, was an improper party, and not that it was challenging personal jurisdiction.[8]

Although this motion was originally filed by Wyndham, WHC's predecessor, there is no question here that, upon substitution, WHC clearly

---

[8] While WHC for the first time, in its reply memorandum added an argument pertaining to the district court's ability to assert personal jurisdiction over it, this issue has never been raised in the requisite "motion under [Fed. R. Civ. Pro. 12] nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a)." We do not find that a mention in a reply memorandum suffices to raise the issue of personal jurisdiction.

14

intended to assume Wyndham's posture in the litigation and adopt Wyndham's motion to dismiss as its own. As mentioned above, the parties entered into a stipulation, replacing Wyndham with WHC. A stipulation between parties, particularly in the litigation context when approved by the court is a binding contract enforceable on the basis of contract principles. See also G.I.C. Corp., Inc. v. United States, 121 F.3d 1447, 1450 (11th Cir. 1997). The stipulation in this case states that "service of process made on the original Defendants is proper and is binding on the Defendants." Moreover, WHC did not file an answer, and instead filed a reply to Stubbs' response to the motion to dismiss, further evincing an intent to assume the procedural position previously held by Wyndham. On this record, it is clear that WHC did not challenge personal jurisdiction and that the issue, as it pertained to WHC, was not before the district court when it ruled sua sponte that the complaint should be dismissed against WHC on this ground. We must agree with Stubbs that the district court improperly ruled on personal jurisdiction as it pertained to WHC "because no such motion was pending, and no notice was given by the Defendants or the court" that such a claim was to be considered. See Palmer v. Braun, 376 F.3d 1254, 1259 (11th Cir. 2004) (holding party waived objection to personal jurisdiction because the "motion clearly raised only venue, and not personal jurisdiction"); Lipofsky v. N.Y. State Workers Comp. Bd., 861 F.2d 1257,

15

1258 (11th Cir. 19988) (holding that personal jurisdiction was waived where it was not raised in responsive pleading or Rule 12 motion). Accordingly, we find that WHC waived the issue of personal jurisdiction.

For the foregoing reasons, the district court's order dismissing the complaint is **REVERSED**, and this cause is **REMANDED** for further proceedings consistent with this opinion.